**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-------------------------------------------------------------------X
ELIAS FEUER,

                        Plaintiff,

             -against-

LAUREN M. MCFERRAN, *Chairman of the National Labor Relations Board*,

                       Defendant.
-------------------------------------------------------------------

**ORDER**

**22-cv-10433 (JW)**

**JENNIFER E. WILLIS, United States Magistrate Judge:**

*Pro se* Plaintiff Elias Feuer ("Plaintiff") brings age discrimination and retaliation claims against Defendant Lauren M. McFerran, Chairman of the National Labor Relations Board ("Defendant"), under the Age Discrimination in Employment Act of 1967 ("ADEA"), 29 U.S.C. §§ 621 *et seq*. In 2016, Plaintiff submitted an application in response to a vacancy announcement at the National Labor Relations Board for Administrative Law Judge positions in New York and Washington D.C ("2016 Vacancy Announcement"). Plaintiff alleges that Defendant did not select him for a position, on the basis of age, and retaliated against him for complaining about such discrimination.

With discovery complete, Plaintiff and Defendant filed cross motions for summary judgment of Plaintiff's retaliation and discrimination claims. For the following reasons, the Court **DENIES** Plaintiff's motion in full and **GRANTS** Defendant's motion in full.

## I. BACKGROUND

The Court recounts only the facts necessary to render its decision. The following facts are drawn primarily from the parties' submissions in connection with the Motions, and are not materially in dispute unless otherwise noted.

### A. The parties

Plaintiff has worked as an administrative law judge ("ALJ") since September 2012. Dkt. No. 49-1 ("Joint SMF") ¶ 11. Prior to his career as an ALJ, Plaintiff worked at the National Labor Relations Board ("NLRB" or "Agency") for over 32 years in various roles in their Brooklyn, New York office. Id. at ¶ 10.

Defendant McFerran is the former Chairman of the NLRB. The NLRB is a federal agency that has a Division of Judges, which in 2016, had 34 ALJs. Id. at ¶ 2. The Division of Judges operate offices in Washington D.C., New York, and San Francisco. Id.

### B. 2016 vacancy announcement

Between July 26, 2016, and August 16, 2016, the NLRB advertised a vacancy announcement seeking to hire five ALJs to fill vacancies in their New York and Washington D.C. offices (the "2016 Vacancy Announcement"). Id. at ¶¶ 4–5; Dkt. No. 71-13 ("Pltf. SMF"), ¶ I.1. The 2016 Vacancy Announcement stated as a "Mandatory Qualification" that "[c]andidates must currently hold an Administrative Law Judge position, at the AL-3 level or above for at least one year." Joint SMF ¶ 6.

On July 26, 2016, Plaintiff submitted a job application in response to the 2016 Vacancy Announcement. Id. at ¶ 8. His job application included two writing samples

and the names and contact information of four professional references. Id. at ¶¶ 17, 23. He was 63 years old at the time of his application submission. Id. at ¶ 9.

### C. Agency's review of candidates

The NLRB received 37 applications in response to the 2016 Vacancy Announcement, which were reviewed by the Agency's Office of Human Resources and then referred by a Hiring Committee consisting of three ALJs: Arthur Amchan (70 years old at the time of Plaintiff's application), Eleanor Laws (47 years old at the time of Plaintiff's application), and Geoffrey Carter (46 years old at the time of Plaintiff's application). Id. at ¶ 12. The Hiring Committee sorted the applicants into Tier 1 and Tier 2 categories. Id. at ¶ 13. All seven Tier 1 candidates had past NLRB work experience, were considered the "best of the best," and included the following candidates: Plaintiff, Jeffrey Gardner, Andrew Gollin, Ben Green, Lillian Richter, Kimberly Sorg-Graves, and Elizabeth Tafe (in no particular order). Id. at ¶¶ 13–14.

As part of the review process, the Hiring Committee reviewed candidates' writing samples and contacted sitting ALJs, a former Agency ALJ, and sitting Agency managers about the Tier 1 applicants. Id. at ¶¶ 18, 22. The Hiring Committee did not conduct any applicant interviews, nor did they contact all references provided by the Tier 1 applicants. Id. at ¶¶ 15–16, 20. Only one of the seven Tier 1 candidates,

3

Elizabeth Tafe, was invited to interview after applying to the 2016 Vacancy Announcement. Dkt. No. 62 ("Def. SMF") ¶ 9; Pltf. SMF § II ¶ 20.

### D. Agency's review of New York office candidates

Three of the seven Tier 1 candidates expressed an interest in working in NLRB's New York Office of the Division of Judges: Plaintiff, Gardner, and Green. Joint SMF, ¶ 21.

The Hiring Committee noted the following comments regarding Plaintiff:

- "Solid writing samples, if a bit technical due to the subject matter. Odd that he did not pick a sample from a trial brief." Id. at ¶ 24.

- By affidavit dated June 12, 2017, Hiring Committee member ALJ Arthur Amchan stated that he "would not have submitted the writing sample [Plaintiff] submitted." Def. SMF ¶ 14.

- David Leech, the Regional Director at the Newark, New Jersey office, was impressed by Plaintiff but was concerned with how much of his recent experience was limited to compliance. Joint SMF ¶ 33.

- Boston Deputy Regional Attorney Scott Burson told ALJ Amchan that Plaintiff was "very bright, competent, aloof, [and] lacks 'the soft people skills.'" Id. at ¶ 34.

- Board Chairman Mark Pearce expressed concerns regarding Plaintiff's judicial temperament. Id. at ¶ 39.

The Hiring Committee noted the following comments regarding Green, another Tier 1 candidate interested in the New York office:

4

- "Writing samples are fine." Id. at ¶ 26.

- ALJ Steve Davis told ALJ Arthur Amchan that Green "can be a little abrupt at times." See Dkt. No. 71-10 at 34.

- Dorothy Foley, Green's supervisor and the Deputy Regional Attorney in the Newark office, reported concerns about Green's temperament to ALJ Amchan. Foley said, "Green makes mountains out of molehills; concerned about his demeanor." Dkt. No. 71-13 at 7.

In late August and early September 2016, members of the Hiring Committee asked Agency ALJs and sitting Agency managers to rank the Tier 1 New York office applicants: Plaintiff, Gardner, and Green. Joint SMF, ¶ 29; Def. SMF, ¶¶ 10, 15. The Hiring Committee received the following rankings:

- Former ALJ Eleanor McDonald ranked Gardner first, Green second, and Plaintiff last. Joint SMF at ¶ 30.

- ALJ Mindy Landow ranked Gardner first. She had only limited exposure to Green, and was not familiar with Plaintiff. Id. at ¶ 31.

- Amchan's notes regarding his conversation with Davis state that Davis would pick "Green and/or [Plaintiff] over Gardner." Id. at ¶ 32.

- David Leech, the Regional Director at the Newark, New Jersey office where Gardner and Green were employed, ranked Gardner first, Green second, and [Plaintiff] third. Id. at ¶ 33.

On September 2, 2016, the Hiring Committee forwarded a written memorandum to the Recommending Official, Chief ALJ Robert Giannasi (who was

5

62 years old at the time of Plaintiff's application). Id. at ¶ 35. The Hiring Committee's memorandum included seven Tier 1 candidates and five Tier 2 applicants for Giannasi's consideration. Id. at ¶ 36. Working with Amchan, Giannasi focused only on the seven Tier 1 candidates. Id. Giannasi then ranked the seven Tier 1 candidates, ranking Plaintiff last. Id.

On September 28, 2016, Giannasi recommended five candidates for hire to the Agency, who ranged from 43 to 53 years old. Id. at ¶ 40. Giannasi did not include Plaintiff in his recommendation. See id. The five Agency board members voted to accept Giannasi's recommendation and hire the five recommended candidates (including Gardner and Green). Id. at ¶ 41. On or around October 3, 2016, Plaintiff was notified that he had not been selected. Id. at ¶ 42.

### E.   Plaintiff's EEOC age discrimination claims

On or around December 24, 2016, Plaintiff timely filed a complaint of age discrimination with the Office of Equal Employment Opportunity ("EEO"). Id. at ¶ 55. On or around January 31, 2017, the EEO sent Plaintiff a letter referencing Plaintiff's December 24, 2016, complaint, summarizing Plaintiff's claims as follows: "the Agency discriminated against you *because of your age when it did not select you for the position of Administrative Law Judge*." (emphasis in original). Id. at ¶ 56. The letter advised Plaintiff that if he disagreed with the articulation of his claim, he should notify the EEO in writing within seven calendar days. Id. Plaintiff did not contact the EEO to advise them that he disagreed with the articulation of his claim. Id. at ¶ 57.

On or around June 24, 2020, the Agency timely filed a motion for summary judgment for Plaintiff's age discrimination complaint before the Equal Employment Opportunity Commission ("EEOC").  Id. at ¶ 58.  On April 29, 2021, the EEOC Administrative Judge ("AJ") granted NLRB's motion and dismissed Plaintiff's complaint.  Id. at ¶ 59.  The EEOC AJ found that there were no outstanding issues of material fact in dispute and that Plaintiff failed to proffer evidence that the Agency's articulated reasons for the non-selection were pretext.  Id.  The decision did not address a claim for retaliation under the ADEA.  Id.  The Agency subsequently issued a final order adopting the EEOC AJ's finding that Plaintiff failed to prove that the NLRB subjected him to discrimination under the ADEA.  Id. at ¶ 60.

On or around July 7, 2021, Plaintiff filed an appeal of the final order concerning his EEOC complaint alleging employment discrimination in violation of the ADEA. Id. at ¶ 61.  On or around September 12, 2022, the EEOC denied Plaintiff's appeal and affirmed the Agency's final order adopting the EEOC AJ's decision.  Id. at ¶ 62. The September 12, 2022, EEOC decision does not reference a claim for retaliation under the ADEA.  Id.

## II. PROCEDURAL HISTORY

On December 9, 2022, Plaintiff filed the complaint in the instant action alleging age discrimination and retaliation claims under the ADEA.  See Dkt. No. 1. On March 16, 2023, Defendant answered.  Dkt. No. 8.

On November 1, 2024, after the close of fact discovery, the parties filed a joint statement of undisputed facts.  Dkt. No 49-1.  On January 3, 2025, Defendant filed a motion for summary judgment requesting dismissal of the complaint, including, *inter*

7

*alia*, her memorandum of law and Local Rule 56.1 statement. Dkt. Nos. 60–63. On March 6, 2025, Plaintiff filed a memorandum of law in opposition to Defendant's motion for summary judgement. Dkt. No. 77. On March 24, 2025, Defendant submitted her reply memorandum in further support of her motion for summary judgment. Dkt. No. 79.

On January 4, 2025, Plaintiff filed a motion for summary judgment requesting a finding in favor of Plaintiff's age discrimination and retaliation claims. Dkt. No. 65. Plaintiff filed an amended motion for summary judgment on February 12, 2025. Dkt. No. 71. On February 26, 2025, Defendant filed a memorandum of law in opposition to Defendant's motion for summary judgment. Dkt. No. 74. On March 24, 2025, Plaintiff filed a response in further support of his motion for summary judgment. Dkt. No. 80.

The Court considers both motions for summary judgment fully briefed.

### III.   LEGAL STANDARD

#### A.   Motions for summary judgment

To prevail on a motion for summary judgment, the movant must "show[] that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The movant bears the burden of demonstrating the absence of a question of material fact. In making this determination, the Court must view all facts "in the light most favorable" to the non-moving party. Holcomb v. Iona Coll., 521 F.3d 130, 132 (2d Cir. 2008); see also Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).

If the movant meets its burden, "the nonmoving party must come forward with admissible evidence sufficient to raise a genuine issue of fact for trial in order to avoid summary judgment." Jaramillo v. Weyerhaeuser Co., 536 F.3d 140, 145 (2d Cir. 2008). "[A] party may not rely on mere speculation or conjecture as to the true nature of the facts to overcome a motion for summary judgment." Hicks v. Baines, 593 F.3d 159, 166 (2d Cir. 2010) (internal quotation marks and citation omitted). Rather, to survive a summary judgment motion, the opposing party must establish a genuine issue of fact by "citing to particular parts of materials in the record." Fed. R. Civ. P. 56(c)(1)(A); see also Wright v. Goord, 554 F.3d 255, 266 (2d Cir. 2009).

"Only disputes over facts that might affect the outcome of the suit under the governing law" will preclude a grant of summary judgment. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). In determining whether there are genuine issues of material fact, the Court is "required to resolve all ambiguities and draw all permissible factual inferences in favor of the party against whom summary judgment is sought." Johnson v. Killian, 680 F.3d 234, 236 (2d Cir. 2012) (quoting Terry v. Ashcroft, 336 F.3d 128, 137 (2d Cir. 2003)) (internal quotation marks omitted). "If, as to the issue on which summary judgment is sought, there is any evidence in the record from any source from which a reasonable inference could be drawn in favor of the nonmoving party, summary judgment is improper." Chambers v. TRM Copy Centers Corp., 43 F.3d 29, 37 (2d Cir. 1994).

In cases that involve claims of discrimination or retaliation, courts must use "an extra measure of caution" in determining whether to grant summary judgment

"because direct evidence of discriminatory intent is rare and such intent often must be inferred from circumstantial evidence found in affidavits and depositions." Schiano v. Quality Payroll Sys., Inc., 445 F.3d 597, 603 (2d Cir. 2006) (citation omitted). However, "the salutary purposes of summary judgment—avoiding protracted, expensive and harassing trials—apply no less to discrimination cases." Weinstock v. Columbia Univ., 224 F.3d 33, 41 (2d Cir. 2000) (citation omitted). Thus, even in the context of a discrimination case, "a plaintiff must provide more than conclusory allegations to resist a motion for summary judgment," Holcomb, 521 F.3d at 137; see also Gorzynski v. JetBlue Airways Corp., 596 F.3d 93, 101 (2d Cir. 2010), and courts may grant summary judgment against "discrimination claims in cases lacking genuine issues of material fact," Holtz v. Rockefeller & Co., 258 F.3d 62, 69 (2d Cir. 2001) (citation omitted).

## IV.    DISCUSSION

### A.    Retaliation claim under ADEA is unexhausted

Defendant argues that Plaintiff's retaliation claim can be put aside without reaching its merits. The Court agrees. Given Plaintiff's failure to exhaust his retaliation claim, the Court need not reach the issue preclusion and merits-based arguments raised in the parties' briefing.

Exhaustion of administrative remedies through the EEOC is "an essential element of the [] ADEA statutory scheme[] and, as such, a precondition to bringing such claims in federal court." Legnani v. Alitalia Linee Aeree Italiane, S.P.A., 274 F.3d 683, 686 (2d Cir. 2001) (internal quotation marks omitted); Zito v. Fried, Frank, Harris, Shriver & Jacobson, LLP, 869 F. Supp. 2d 378, 391 (S.D.N.Y. 2012).

10

"A plaintiff may assert claims 'not raised in an EEOC complaint, however . . . if they are 'reasonably related' to the claim filed with the agency.'" Id. (quoting Williams v. N.Y. City Hous. Auth., 458 F.3d 67, 69–70 (2d Cir. 2006). "This Circuit has recognized that '[a] claim is considered reasonably related if the conduct complained of would fall within the scope of the EEOC investigation which can reasonably be expected to grow out of the charge that was made.'" Id. at 70 (quoting Deravin v. Kerik, 335 F.3d 195, 201 (2d Cir. 2003)). In making this determination, "[t]he central question is whether the complaint filed with the EEOC gave that agency adequate notice to investigate discrimination on both bases." Id.

    1.    Retaliation claim was not specifically asserted in EEOC complaint

As an initial matter, it is undisputed that Plaintiff's EEOC charge does not contain any allegations or references to retaliation. See Dkt. No. 63-20 (Plaintiff's EEOC charge); Joint SMF ¶ 56; Dkt. No. 77 at 2 (Plaintiff conceding his EEOC charge "did not include the magic word retaliation"); Dkt. No. 71 at 1, n. 1 (Plaintiff explaining that his EEOC charge "does not allege retaliation as a secondary motive.").

Notably, the record also establishes that the EEO understood Plaintiff's complaint to consist solely of an age discrimination claim and not a retaliation claim. For instance, about three months after receiving Plaintiff's EEOC complaint, the EEO sent Plaintiff a letter of their understanding of Plaintiff's claim: that "the [NLRB] discriminated against you *because of your age when it did not select you for the position of Administrative Law Judge.*" (emphasis in original). Id. at ¶ 56. The EEOC advised Plaintiff that he should notify the Office if he disagreed with their

11

description of his claim. Id. Plaintiff did not do so. Id. at ¶ 57. Plaintiff also fatally acknowledges that the EEOC administrative judge "refused to hear" Plaintiff's retaliation claim unless Plaintiff withdrew his pending complaint and refiled a new complaint "after completion of a separate Agency investigation of the retaliation claim." Dkt. No. 71 at 1, n. 1. Plaintiff nonetheless proceeded with his pending case despite the explicit warning from the administrative judge that his retaliation claim would not be heard. Id.

          2.        Retaliation claim is not "reasonably related" to filed claim

Further, Plaintiff's retaliation claim is not "reasonably related" to his age discrimination claim. Courts in this circuit have held that "retaliation claims represent an entirely distinct theory of liability, which cannot be viewed as reasonably related unless they are specifically included in an EEOC charge.'" Zito, 869 F. Supp. 2d at 392 (quoting Gilani v. National Ass'n of Securities Dealers, Inc., No. 96 Civ. 8070 (SS), 1997 WL 473383, at *4 (S.D.N.Y. Aug. 19, 1997)).

Here, Plaintiff failed to "specifically include" *any* allegations of retaliation in his EEOC complaint. Id. Plaintiff contends that his complaint (see Dkt. No. 63-20) provided the EEOC with notice of his retaliation claim because the complaint states the EEOC "failed to resolve the discriminatory failure to appoint [him] as an NLRB ALJ" and that "[t]he NLRB selected two candidates . . . one of whom was not eligible for consideration and whose appointment and subsequent re-appointment are transparent acts of nepotism in service of age discrimination. . ." Dkt. No. 70 at 3; Dkt. No. 63-20 at 3. But these vague references to Plaintiff's non-selection and

12

ultimate selection of other candidates do not equate to specific allegations of retaliation sufficient to trigger agency investigation. See Harriram v. Fera, No. 21 Civ. 3696 (RA), 2023 WL 2647856, at *5 (S.D.N.Y. Mar. 27, 2023) (dismissing retaliation claim as unexhausted where EEOC complaint only contained specific allegations of discrimination); Moguel v. Covenant House/New York, 2004 WL 2181084, at *8 (S.D.N.Y. Sept. 29, 2004) (collecting cases dismissing retaliation claims under Title VII for failure to exhaust administrative remedies where the EEOC complaint only included discrimination allegations); see Terry v. Ashcroft, 336 F.3d 128, 151 (2d Cir. 2003) (noting that the "administrative exhaustion requirement is the same under the ADEA as it is under Title VII").

Because Plaintiff's claims were neither exhausted nor reasonably related to his age discrimination claim, this Court lacks jurisdiction over Plaintiff's retaliation claim under the ADEA.

### B. Discrimination Claims Under the ADEA

The ADEA makes it "unlawful for an employer . . . to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment because of such individual's age." 29 U.S.C. § 623(a)(1). In the Second Circuit, courts analyze age discrimination claims under the ADEA using the three-step burden shifting framework set forth in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973). See Gorzynski v. JetBlue Airways Corp., 596 F.3d 93, 106 (2d Cir. 2010).

An ADEA plaintiff bears the initial burden of establishing a *prima facie* case of employment discrimination. Id. This means showing that (1) the plaintiff was

within the protected age group (meaning he was age 40 or above); (2) he was qualified for the position; (3) he experienced an adverse employment action; and (4) such action occurred under circumstances giving rise to an inference of discrimination. Id. at 106–07 (citing Carlton v. Mystic Transp., Inc., 202 F.3d 129, 134 (2d Cir. 2000)); see 29 U.S.C. § 631(a) (stating that ADEA protects people over age 40).

If a plaintiff makes out a *prima facie* case of age discrimination, the burden shifts to the defendant to "articulate some legitimate, nondiscriminatory reason for the [adverse act]." Mattera v. JPMorgan Chase Corp., 740 F. Supp. 2d 561, 571 (S.D.N.Y. 2010) (quoting Leibowitz v. Cornell Univ., 584 F.3d 487, 499 (2d Cir. 2009), superseded on other grounds by Local Civil Rights Restoration Act of 2005, N.Y.C. Local Law No. 85 (2005) (internal quotation marks omitted)). The defendant's burden is "one of production, not persuasion." Reeves v. Sanderson Plumbing Prods., 530 U.S. 133, 142 (2000).

Once a defendant makes such a showing, the presumption evaporates and plaintiff "must prove, by a preponderance of the evidence, that age was the 'but-for' cause of the challenged adverse employment action and not just a contributing or motivating factor." Gorzynski, 596 F.3d at 106 (quoting Gross v. FBL Fin. Servs. Inc., 557 U.S. 167, 180 (2009)). In other words, "the burden shifts back to the plaintiff to demonstrate by competent evidence that 'the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination.'" Leibowitz, 584 F.3d at 499 (quoting Patterson v. Cnty. of Oneida, 375 F.3d 206, 221 (2d Cir. 2004)); Wolf v. Time Warner, Inc., 548 F. App'x 693, 694 (2d Cir. 2013)

(holding that in third step of burden-shifting framework, "plaintiff must prove that the employer's proffered reason was a pretext for discrimination") (quoting McPherson v. N.Y.C. Dep't of Educ., 457 F.3d 211, 215 (2d Cir. 2006)).

### 1. *Prima facie* case of discrimination

Here, the parties do not dispute that Plaintiff has satisfied all four requirements under the McDonnell Douglas framework for a *prima facie* age discrimination claim under the ADEA: (1) Plaintiff was over 40 years of age at all relevant times, (2) was qualified for the NLRB position for which he applied, (3) was not selected for that position, and (4) such non-selection gave rise to an inference of age discrimination. See Dkt. No. 61 at 19–20. Therefore, the Court assumes, without deciding, that Plaintiff has met his initial burden.

### 2. Legitimate, nondiscriminatory reason

There is no genuine dispute that Defendant had "legitimate, nondiscriminatory reasons" for Plaintiff's non-selection. Mattera, 740 F. Supp. 2d at 571. At this stage, all a defendant must do is to "introduce evidence which, taken as true, would permit the conclusion that there was a nondiscriminatory reason for the adverse action." St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 509 (1993) (emphasis in original).

Defendant easily meets her burden here. During the application review process, members of the Hiring Committee voiced concerns regarding Plaintiff's judicial temperament and his lack of soft people skills. Joint SMF ¶¶ 34, 39. Others noted his writing samples "were a bit technical" and were concerned with how much of his recent experience was limited to compliance. Id. at ¶¶ 24, 33. When ranked

against other Tier 1 candidates interested in the New York office, Plaintiff was ranked last by multiple people on the Hiring Committee. See id. at ¶¶ 30, 32, 33. And when ranked against all seven Tier 1 candidates, Plaintiff was ranked last by the Recommending Official, Chief Administrative Law Judge Robert Giannasi. Id. at ¶¶ 35–36. The Court therefore concludes that those reasons, taken as true, are non-discriminatory and sufficient to satisfy the second McDonnell Douglass step.

### 3. Pretext

Because Defendant has come forward with legitimate, non-discriminatory reasons for Plaintiff's non-selection, the burden now shifts to Plaintiff to show that these explanations were pretexts for age discrimination. See Kirkland v. Cablevision Sys., 760 F.3d 223, 225 (2d Cir. 2014). A plaintiff bringing an ADEA claim satisfies that burden by proving, "by a preponderance of the evidence that age was the 'but-for' cause of the challenged adverse employment action' and not just a contributing or motivating factor." Gorzynski, 596 F.3d at 106 (quoting Gross, 557 U.S. at 180). Plaintiff makes several arguments why a jury could find pretext. None carry the day.

Here, Plaintiff has not adduced any evidence undermining Defendant's showings as to the age-neutral reasons why Plaintiff was not selected. Plaintiff asserts, among other reasons, that age discrimination was a but-for cause of his non-selection because (1) he was "vastly more qualified" than the other two New York candidates (who were both 48 years old at the time of applying) and (2) Tier 1 candidate Green, who ultimately received the New York position, had not completed a year of service as an ALJ, which was noted as a requirement in the 2016 Vacancy Announcement. Joint SMF, ¶ 6, Pltf. SMF § II, ¶ 46.

16

First, this is not a case where Plaintiff was "objectively so much better qualified than the person promoted over him that the employer's justification for the decision must be pretextual." Witkowich v. Gonzales, 541 F. Supp. 2d 572, 582 (S.D.N.Y. 2008). Although undisputed that Plaintiff was qualified for the job (see supra § IV.B.1), the record also reflects that the other Tier 1 applicants who received the New York positions had substantial work experience and received positive reviews from members of the Hiring Committee during the application process. See Dkt. No. 76-3 (Gardner Resume); Dkt. No. 76-4 (Green Resume).

Second, even assuming a reasonable person could conclude from the facts of this case that it was *wrong* for Defendant not to hire Plaintiff, "the ADEA does not make employers liable for doing stupid or even wicked things; it makes them liable for *discriminating*" against people based on their age. Norton v. Sam's Club, 145 F.3d 114, 120 (2d Cir. 1998) (emphasis in original). Critically, Plaintiff provides *no* evidence that any comments—even stray remarks—were made about his age during the application or hiring process. See, e.g., Sklar v. N.Y. Life Ins. Co., 34 Fed.App'x. 403, 405 (2d Cir. 2002) ("[Plaintiff] can point to no evidence that the reasons given for his termination were pretextual or that, even if pretextual, those reasons served as a mask for age discrimination. Therefore, summary judgment was properly awarded."); Schnabel v. Abramson, 232 F.3d 83, 88 (S.D.N.Y. 2000) ("[B]eyond the minimal proof required to state a prima facie case, [plaintiff] has offered *no* evidence that he was discriminated against *because of his age*.") (emphasis in original).

This sparse record, even if taken in the light most favorable to Plaintiff, would not permit a rational jury to find that age discrimination was a but-for cause of Plaintiff's non-selection other than by pure speculation. Plaintiff's age discrimination claim is therefore dismissed with prejudice.

## V.   CONCLUSION

For the foregoing reasons, Plaintiff's motion for summary judgment is **DENIED** in full and Defendant's motion for summary judgment is **GRANTED** in full.

**The Clerk of Court is respectfully requested to close Dkt. Nos. 60, 65, and 71.**

SO ORDERED.

Dated:    New York, New York
          September 29, 2025

*Jennifer E. Willis*
JENNIFER E. WILLIS
United States Magistrate Judge